UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KENT PIVONKA and JAMES SMITH, on behalf of themselves and a class of similarly situated persons,

              Plaintiffs,

    v.

ALLSTATE INSURANCE COMPANY, an Illinois Corporation, and ALLSTATE PROPERTY AND CASUALTY COMPANY, an Illinois Corporation,

              Defendants.

No. 2:11-cv-01759-TLN-CKD

**ORDER**

This matter is before the Court on Plaintiffs Kent Pivonka ("Pivonka") and James Smith's ("Smith") (collectively, "Plaintiffs") Motion for Leave to File a First Amended Complaint. (ECF No. 78.) Defendants Allstate Insurance Company and Allstate Property and Casualty Company (collectively, "Defendants") oppose Plaintiffs' motion (ECF No. 80), and Plaintiffs have filed a reply (ECF No. 82). For the reasons set forth below, the Court GRANTS Plaintiffs' motion.

///

///

///

///

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This matter involves California homeowners who carried insurance policies with Defendants and subsequently made claims for losses to personal property. (ECF No. 53 at ¶¶ 7–8, 12.) On May 27, 2011, Plaintiffs filed suit in Sacramento County Superior Court against Defendants seeking declaratory relief and alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Unfair Competition Law ("UCL") under California Business and Professions Code § 17200. (ECF No. 1 at 11–30.) Defendants subsequently removed the action to this Court. (*See id.*)

The Court granted Defendants' 2011 motion to compel appraisal and stayed the case pending resolution of the appraisal process. (ECF No. 25.) Following the October 27, 2016 appraisal process hearing, the appraisal panel issued awards on November 18, 2016.[1] (ECF No. 59 at 13.) On March 22, 2017, the Court lifted the stay (ECF No. 47) and thereafter Defendants filed a motion to dismiss the complaint (ECF No. 48) based on the appraisal panel's finding that Defendants had overpaid Plaintiffs. (ECF No. 59 at 14.) Plaintiffs did not file an opposition, but instead filed a First Amended Complaint ("FAC") on May 8, 2017 (ECF No. 53). On May 9, 2017, the Court issued a minute order denying Defendants' motion to dismiss as moot pursuant to the filing of the FAC. (ECF No. 54.)

On June 21, 2017, Defendants filed a motion to strike, dismiss, or compel appraisal of the FAC (ECF No. 59) and a related request for judicial notice (ECF No. 60). On July 11, 2019, the Court granted in part Defendants' motion to strike, dismiss, or compel appraisal of the FAC, striking Plaintiffs' FAC for failure to adhere to the proper procedural guidelines, but denying Defendants' motion to dismiss or compel appraisal without prejudice. (*See* ECF No. 73.)

On September 30, 2019, Plaintiffs filed the instant Motion to File a FAC. (ECF No. 78.) On October 27, 2019, Defendants submitted an opposition (ECF No. 80) and a Request for Judicial Notice (ECF No. 81). On October 24, 2019, Plaintiffs filed a reply. (ECF No. 82.)

---

[1]   The Court need not recount all background facts of the instant case here, as they are set forth fully in the Court's July 12, 2019 Order Granting Defendants' Motion to Strike the First Amended Complaint. (*See* ECF No. 73.)

1

## II.   STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 15 governs amended and supplemental pleadings. Fed. R. Civ. P. 15. Rule 15(d) provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."[2] Fed. R. Civ. P. 15(d); *see also Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed") (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (per curiam)).

"Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). "In deciding whether to permit a supplemental pleading, a court's focus is on judicial efficiency." *Yates v. Auto City 76*, 299 F.R.D. 611, 613 (N.D. Cal. 2013) (citing *Planned Parenthood of S. Az. v. Neely (Neely)*, 130 F.3d 400, 402 (9th Cir. 1997)). The use of supplemental pleadings is "favored" because it enables a court to award complete relief in one action "to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *Keith*, 858 F.2d at 473 (citing *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963), *cert. denied*, 367 U.S. 963 (1964); *Yates*, 299 F.R.D. at 613 (citation omitted)). The Supreme Court has stated that new claims, new parties, and events occurring after the original action are all properly permitted under Rule 15(d). *Keith*, 858 F.2d at 475 (citing *Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 226–27 (1964)). Moreover, even though supplemental proceedings are "favored," they "cannot be used to introduce a separate, distinct, and new cause of action." *Neely*, 130 F.3d at 402 (citations omitted). Rather, matters newly alleged in a supplemental complaint must have "some relation to the claims set forth in the original pleading." *Keith*, 858 F.2d at 474. "[T]he

---

[2]   In their motion, Plaintiffs request leave to amend their Complaint under Rule 15(a). (*See* ECF No. 78.) Defendants correctly note in their opposition that Rule 15(d) "governs supplemental pleadings seeking to add allegations regarding events that 'happened after the date of the [original] pleading.'" (ECF No. 80 at 12.) As Plaintiffs seek to add allegations regarding events that happened after May 27, 2011, the Court construes Plaintiffs' instant motion as a Rule 15(d) motion.

fact that a supplemental pleading technically states a new cause of action should not be a bar to its allowance, but only a factor to be considered by the court in the exercise of discretion . . ." *Id.*

"The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a)." *Yates*, 299 F.R.D. at 614 (citing *Athena Feminine Techs., Inc. v. Wilkes*, No. C 10-4868 SBA, 2013 WL 450147, at *2 (N.D. Cal. Feb. 6, 2013)) (internal quotations omitted). Courts commonly apply the five *Foman* factors to Rule 15(d) motions: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure of previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Natural Resources Defense Council v. Kempthorne*, No. 1:05-cv-01207-LGO GSA, 2016 WL 8678051 (E.D. Cal. Apr. 22, 2016). Among these five factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice or a 'strong showing' of any other *Foman* factor, there is a presumption in favor of granting leave to supplement." *Lyon*, 308 F.R.D. at 214 (citing *Eminence Capital, LLC*, 316 F.3d at 1052)). Supplementation should be permitted where doing so would serve Rule 15(d)'s goal of judicial efficiency, and a court should assess whether an entire controversy can be settled in one action. *See Neely*, 130 F.3d at 402.

### III.   ANALYSIS

Plaintiffs seek leave to file a FAC that "accounts for the significant factual developments that have occurred since the original complaint was filed" and "adds a new representative plaintiff." (ECF No. 78 at 2.) The Court will first address Defendants' Request for Judicial Notice (ECF No. 81) and then evaluate Plaintiff's motion.

#### A.   Defendants' Request for Judicial Notice

Defendants request the Court take judicial notice of Exhibits A-1 through H. (ECF No. 81 at 2–3.) Plaintiffs do not object to this request in their reply. (*See* ECF No. 82.)

Federal Rule of Evidence 201(b) authorizes a court to take judicial notice of a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court may not take judicial notice of findings of fact from another case, nor may a court take judicial notice of any matter that is in dispute.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *Lee v. City of L.A.*, 250 F.3d 668, 688–90 (9th Cir. 2001); *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983).  Moreover, as with evidence generally, the matter to be judicially noticed must be relevant to the issues in the case.  Fed. R. Evid. 402; *Vallot v. Central Gulf Lines, Inc.*, 641 F.2d 347, 350 (5th Cir. 1981) (per curiam).  Courts "may take notice of *proceedings* in other courts, both within and without the federal judicial system, if those proceedings have a *direct* relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc. (Borneo)*, 971 F.2d 244, 248 (9th Cir. 1992) (emphasis added).

Relatedly, "[d]ocuments are subject to incorporation by reference if the plaintiff refers to them 'extensively' or they form the basis of the complaint."  *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 592 (N.D. Cal. 2019) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).  The Ninth Circuit has recognized the disjunction between incorporation by reference and judicial notice.  *See Khoja*, 899 F.3d at 1003 ("[U]nlike judicial notice, a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'") (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  Yet, "[i]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id.*

Exhibits A-1 and A-2[3] are insurance policy declarations ("Policy Declarations") relating to insurance coverage purchased by Smith and Pivonka.  (ECF No. 81-1 at 1–23.)  Both the Complaint and FAC refer to insurance contracts between Plaintiffs and Defendants "extensively."

---

[3]      Exhibit A-1 includes Policy Declarations for Deluxe Homeowners Policy No. 0027730234 issued to Pivonka for property located at 8955 Hollybrook Court, Elk Grove, California.  (ECF No. 81-1 at 1–5.)  Exhibit A-2 includes Policy Declarations for Deluxe Homeowners Policy No. 027401404 issued to Smith for property located at 2964 Northhill Street, Selma, California.  (ECF No. 81-1 at 6– 23.)

(*See, e.g.*, ECF No. 72-8 at 3–25;) *see also Evanston Police Pension Fund*, 411 F. Supp. 3d at 592.  Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing necessarily rely on the existence of a contractual relationship and insurance coverage between Plaintiffs and Defendants.  (*See, e.g.*, ECF No. 78-2 at 19–24.)  Accordingly, the Court finds the Policy Declarations for Pivonka and Smith are instead incorporated by reference into the Complaint.  (ECF No. 81-1 at 1–23.)

Exhibits D-1, D-2, E-1, and E-2[4] are the November 2018 appraisal awards regarding Pivonka's and Smith's personal property claims, along with the accompanying itemized lists of contents containing actual cash value ("ACV") amounts ("Appraisal Documents").  (ECF Nos. 81-4–81-5.)  The Court finds the Appraisal Documents are instead incorporated by reference in both the Complaint and FAC because Plaintiffs "refer to them 'extensively' and they form the basis of the [C]omplaint."  (*See* ECF No. 1 at 11–43; ECF No. 78-2 at 2–25); *see also Evanston Police Pension Fund*, 411 F. Supp. 3d at 592.  However, the Court does not assume the truth of the incorporated Appraisal Documents insofar as they purport to establish ACV losses.  *See Khoja*, 899 F.3d at 1003.

Exhibits G and H[5] are "proceedings and determinations" of this Court and the Ninth Circuit, which the Ninth Circuit has held are suitable for judicial notice.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988); *see also Borneo*, 971 F.2d at 248.  Accordingly, Defendants' Request for Judicial Notice of Exhibits G and H is GRANTED.

///

---

[4]     Exhibit D-1 is the November 18, 2016 Appraisal Award regarding Pivonka's Personal Property Claim No. 0165206707 and Exhibit D-2 is the itemized list of contents containing ACV amounts allocated by the Appraisal Panel for Claim No. 0165206707.  (*See* ECF No. 81-4.) Exhibit E-1 is the November 18, 2016 Appraisal Award regarding Smith's Personal Property Claim No. 0175741750 and Exhibit E-2 is the itemized list of contents containing ACV amounts allocated by the Appraisal Panel for Claim No. 0175741750.  (*See* ECF No. 81-5.)

[5]     Exhibit G is this Court's December 8, 2009 Order Granting Defendants' Motion to Dismiss in *Enger v. Allstate Ins. Co. et al.*, No. 2:09-cv-02618-GEB-EFB.  (ECF No. 81-7.) Exhibit H is the Ninth Circuit's December 28, 2010 Memorandum in *Enger v. Allstate Ins. Co. et al.*, No. 2:09-cv-02618-GEB-EFB.  (ECF No. 81-8.)

Defendants have not pointed to any judicially noticeable facts in the remainder of the exhibits — Exhibits A-3 through A-11, B-5 through B-17, C-1, C-2, and F.[6]  Additionally, these exhibits do not "form the basis" of Plaintiffs' Complaint or the FAC, nor do those filings refer to these exhibits "extensively."  *See Evanston Police Pension Fund*, 411 F. Supp. 3d at 592.  Accordingly, Defendants' Request for Judicial Notice of Exhibits A-3 through A-11, B-5 through B-17, C-1, C-2, and F is DENIED.

## B.   Plaintiffs' Motion

Plaintiffs seek leave to file a FAC to add Denise Goodwin ("Goodwin") as a plaintiff, update the damages allegations, and further allege the following: Plaintiffs have gone through appraisal with Defendants; "appraisal is an unnecessary process" that was "conducted at Plaintiffs' expense"; and Defendants "over-depreciate[] personal property based on the age of the property." (ECF No. 78 at 4.)  In opposition, Defendants argue granting leave to supplement would be untimely and prejudicial, as well as futile. (ECF No. 80 at 13–22). The Court will address each of Defendants' arguments in turn.

### i.   Untimely and Prejudicial[7]

Defendants argue that because the Court found Plaintiffs' previous attempt to amend the Complaint and add new parties would prejudice Defendants (*see* ECF No. 73 at 5), the Court should find adding Goodwin now would be similarly prejudicial. (ECF No. 80 at 21–22.) Plaintiffs contend Defendants will not suffer prejudice because the amendments do not add new defendants or new claims, nor do they raise new legal theories. (ECF No. 78 at 5; ECF No. 82 at

---

[6]    Exhibits A-3 through A-11 and B-5 through B-17 are a variety of Defendants' policy forms and endorsements. (*See* ECF No. 81 at 2–3; ECF No. 81-1 at 24–81; ECF No. 82-2). Exhibit C-1 is a July 12, 2011 Letter from Jeff Feetham to Plaintiffs' counsel demanding appraisal of Pivonka's claim and Exhibit C-2 is a July 8, 2011 letter from Catherine Smith to Plaintiffs' counsel demanding appraisal of Smith's claim. (*See* ECF No. 81-3.)  Exhibit F is the Declaration of Catherine Smith. (ECF No. 81-6.)

[7]    Defendants raise the undue delay and prejudice factors together (*see Lyon*, 308 F.R.D. at 214), arguing Defendants would suffer prejudice based on "(a) the length of the litigation, (b) the improper 'revolving door' of new plaintiffs, and (c) the Court's previous finding of prejudice . . ." (ECF No. 80 at 22 (citing ECF No. 73 at 5).)  The Court therefore will address the undue delay and prejudice factors together.

1  4–5.)  Further, Plaintiffs underscore that the amendments "would not occasion significant

2  additional discovery" as Defendants have not yet "undertaken substantial discovery," nor will

3  they force Defendants "to retake a significant number of additional depositions." (ECF No. 82 at

4  5.)

5         As with a motion to amend under Rule 15(a), prejudice to the opposing party is a valid

6  consideration when determining whether to allow supplemental pleadings under Rule 15(d). *See*

7  *Eminence*, 316 F.3d at 1052.  "Prejudice may be established in a variety of ways, such as where a

8  motion to amend is made after the cutoff date for such motions, or when discovery has already

9  closed or is about to close." *Lyon*, 308 F.R.D. at 214 (citing *Zivkovic v. Southern Cal. Edison Co*,

10 302 F.3d 1080, 1087 (9th Cir. 2002)); *see also Solomon v. North Am. Life & Cas. Ins. Co.*, 151

11 F.3d 1132, 1138–39 (9th Cir. 1998).  Nevertheless, the Ninth Circuit has affirmed a district

12 court's grant of leave to supplement even though it would require reopening discovery, as "most

13 of the information on the added claim would be available in [defendant's] own files" and "little

14 additional discovery would be needed." *Lyon*, 308 F.R.D. at 215 (quoting *LaSalvia v. United*

15 *Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986)).  "The party opposing leave to amend

16 bears the burden of showing prejudice." *U.S. v. Somnia, Inc.*, 339 F. Supp. 3d 947, 958 (E.D.

17 Cal. 2018) (quoting *Serpa v. SBC Telecomms.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004)); *DCD*

18 *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

19        Here, Defendants' arguments are based on the Court's prior finding of prejudice with

20 respect to Plaintiffs' earlier improper attempt to amend their pleadings and add four new

21 Plaintiffs.  (*See* ECF No. 80 at 21; ECF No. 73 at 5.)  Defendants assert "[t]his prejudice would

22 only be exacerbated by allowing Plaintiffs to add yet another new plaintiff (after dropping four

23 previously-proposed new plaintiffs) nearly eight years after the commencement of this litigation."

24 (ECF No. 80 at 21 (emphasis omitted).)  Defendants maintain adding Goodwin would result in

25 "additional time and expense" and "wast[e] resources of the Court and the parties on claims that

26 have no merit." (*Id.* at 22.)  The Court disagrees.

27 ///

28 ///

Plaintiffs previously failed to adhere to the proper procedural guidelines and did not seek leave from the Court to amend.  (ECF No. 73 at 5.)  While the Court suggested Plaintiffs' prior improper attempt to amend would have prejudiced Defendants, the Court was careful to state that "Plaintiffs' argument . . . does not lessen the burden on Defendants, who must now defend against two new plaintiffs, *who were improperly added without leave of the Court.*"  (*Id.* (emphasis added).)  The Court also acknowledged Plaintiffs might at a future date "properly and successfully file an amended complaint."  (*Id.*)  Plaintiffs' instant motion is properly submitted.  *Cf. Eminence*, 316 F.3d at 1053 (reversing district court's denial of leave to amend because plaintiffs had not filed multiple pleadings in an attempt to cure pleading deficiencies and "most importantly, it appears that plaintiffs had a reasonable chance of successfully stating a claim if given another chance").  While Defendants suggest the four previously proposed plaintiffs were "dropp[ed]," Plaintiffs counter that while Defendants' previous "motion to dismiss and/or strike was pending, [the four previously-proposed new plaintiffs] signed releases in the course of their third-party fire cases in which they also agreed to release claims against their property insurers." (ECF No. 82 at 9.)  Moreover, Goodwin's claims clearly bear more than "some relation" to the original claims in the Complaint.  *See Keith*, 858 F.2d at 474.  In fact, Goodwin's claims are substantially similar to Pivonka's and Smith's claims.  (*See* ECF No. 78 at 4; *compare* ECF No. 78-2 at ¶¶ 70–72, *with id.* at ¶¶ 30–49, 50–69, 73.)

In response to Defendants' undue delay argument that Plaintiffs seek to add Goodwin's claims "nearly eight years" after the original Complaint was filed, Plaintiffs contend there is no delay with respect to Goodwin's claim, as it "accrued less than one year ago." (ECF No. 82 at 10.)  "[D]elay in and of itself is not sufficient reason to deny a motion to supplement the complaint." *San Luis & Delta-Mendota Water Authority v. U.S. Dept. of Interior*, 236 F.R.D. 491, 500 (E.D. Cal. 2006) (citing *Bromley v. Michigan Educ. Association–NEA*, 178 F.R.D. 148, 154 (E.D. Mich. 1998)).  Defendants cite to case law in support of their contentions regarding the prejudice they would face as a result of Plaintiffs' supplemented pleading.  (ECF No. 80 at 21 (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988)).)  However, in both *Texaco, Inc.* and *McGlinchy*, the parties had already

1  completed discovery before the amended pleadings were filed.  *See Texaco, Inc.*, 939 F.3d at 799

2  (affirming district court's denial of leave to amend where plaintiff waited to amend until after

3  discovery was over, as defendant "would have been unreasonably prejudiced by the addition of

4  numerous new claims so close to trial, regardless of [plaintiff's] argument that they were

5  'implicit' in the previously pleaded claims"); *McGlinchy*, 845 F.2d at 809 (affirming district

6  court's denial of leave to amend because "the resulting delay and expense would have prejudiced

7  . . . defendants, who were entitled to rely on a timely close of discovery and a near-term trial

8  date").  By contrast, the instant case is still in the pleading stage, no discovery has taken place,

9  and no trial date has yet been contemplated, much less scheduled.

10        Accordingly, the Court finds Defendants fail to meet their burden of establishing they

11  would face prejudice if Plaintiffs' motion is granted.  *See San Luis*, 236 F.R.D. at 499–502

12  (finding arguments that plaintiffs' ten-month delay between claims accruing and supplementing

13  the complaint failed to establish prejudice and granting plaintiffs' motion to supplement).  Based

14  on the foregoing, the Court finds the undue delay and prejudice factors weigh in favor of granting

15  leave to supplement.

16                      *ii.*     *Futility*

17        "A proposed amendment is futile only if no set of facts can be proved under the

18  amendment to the pleadings that would constitute a valid and sufficient claim."  *Miller v. Rykoff-*

19  *Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *implied overruling recog. on other grounds by*

20  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also U.S. v. Corinthian Colleges*, 655 F.3d 984, 995

21  (9th Cir. 2011) ("[D]ismissal without leave to amend is improper unless it is clear, upon *de novo*

22  review, that the complaint could not be saved by any amendment.") (citations and internal

23  quotation marks omitted); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Balistreri v.*

24  *Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990).  Denial of such motions on futility

25  grounds is "rare."  *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003).

26  "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended

27  pleading until after leave to amend is granted and the amended pleading is filed."  *Id.* (citation

28  omitted).

1    Defendants argue leave to supplement should be denied on futility grounds, as (1)

2  Plaintiffs have no viable claim for breach of contract, (2) Plaintiffs' claim for breach of the

3  implied covenant of good faith and fair dealing fails as a matter of law, (3) Plaintiffs cannot

4  recover restitution or injunctive relief under the UCL, and (4) Plaintiffs have no viable claim for

5  declaratory relief. (ECF No. 80 at 13–21.) The Court will address each claim in turn.

6                              *a) Breach of Contract*

7    First, Defendants contend that because the appraisal process determined Defendants

8  overpaid Pivonka's and Smith's claims, Defendants have "paid all contractual benefits due," and

9  therefore "Plaintiffs have no right to challenge [their] methodology." (ECF No. 80 at 13–14

10 (citing *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 913 (C.D. Cal. 1994)).)

11 However, the cited authority does not support Defendants' argument. *Paulson* primarily

12 addressed tort claims brought against State Farm for their initial denial of the insured plaintiff's

13 claim arising from an auto accident. 867 F. Supp. at 913 n.1 (explaining the insured's policy

14 coverage of $30,000 was offset by amounts received from the insured's employer and the

15 negligent motorist's insurance, and State Farm's eventual payment of $8,260, coupled with the

16 $21,740 the insured received from the other motorist, satisfied State Farm's coverage obligation).

17 To be sure, *Paulson* did not involve any arguments, findings, or holdings regarding disputes about

18 methodologies of calculating insured losses or whether an insurer's calculation methodology ran

19 afoul of California law. Rather, the dispute in *Paulson* regarding insurance coverage obligations

20 concerned whether the insurer was entitled to offset its coverage obligations to the insured by

21 amounts paid to the insured by other parties responsible for the losses. *See id.* at 917 n.8.

22 Further, in critical distinction to the present case, the plaintiff in *Paulson* "was not compelled to

23 undergo arbitration," but elected to do so voluntarily. *Id.* at 918. The *Paulson* court found the

24 amount the insurer paid the plaintiff insured was the amount the plaintiff "originally had

25 requested," and "under the policy, [plaintiff] *could not be awarded more than that which he was*

26 *offered*" prior to submitting the dispute for arbitration. *Id.* at 913, 918 (emphasis added). Though

27 the plaintiff's insurer paid less than $30,000, the other involved parties and insurers paid plaintiff

28 amounts that, when taken together, equaled the maximum coverage allowed under the plaintiff's

1  policy.  *Id.* at 917 n.8.  In short, *Paulson* addressed a set of facts that differs from those presently

2  before the Court.

3      In reply, Plaintiffs maintain Defendants' "pre-appraisal conduct" may be challenged.

4  (ECF No. 82 at 4 (citing *Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 193 Cal. App. 4th

5  49 (2011); *Doan v. State Farm General Ins. Co.*, 195 Cal. App. 4th 1082 (2011), and *Alexander v.

6  Farmers Ins. Co., Inc.*, 219 Cal. App. 4th 1183 (2013)).)  The Court agrees.  "[T]he regulations

7  explicitly document that the [§] 2071 appraisal procedure does not limit recourse to other

8  remedies."  *Doan*, 195 Cal. App. 4th at 1096 (quoting *Kirkwood*, 193 Cal. App. 4th at 62); Cal.

9  Code Regs. tit. 10, § 2695.9(e); *see also Alexander*, 203 Cal. App. 4th at 1198 ("Whether the

10  appraisers correctly calculate the actual cash value of Respondents' losses is irrelevant to whether

11  Farmers correctly calculated actual cash value when it adjusted the claims.").  "Once the appraisal

12  provision under an insurance policy is invoked, the appraisal process shall not include any legal

13  proceeding or procedure not specified under California Insurance Code [§] 2071.  Nothing herein

14  is intended to preclude separate legal proceedings on issues unrelated to the appraisal process."

15  *Doan*, 195 Cal. App. 4th at 1096 (quoting Cal. Code Regs. tit. 10, § 2695.9(e)).  Further, though

16  "[a]n appraisal pursuant to [§] 2071 is deemed an arbitration as a matter of law," the appraisal

17  process is "limited" and "shall not include any legal proceeding or procedure not specified under"

18  § 2071.  *Kirkwood*, 193 Cal. App. 4th at 57–58 (quoting Cal. Code Regs. tit. 10, § 2695.9(e)).

19  "[S]ection 2071 constrains the role of the appraiser to that of appraising 'the loss, stating

20  separately actual cash value and loss to each item'" and "[a]ppraisers have no power to interpret

21  the insurance contract or other governing statutes."  *Id.* at 58–59.

22      Defendants argue *Kirkwood* and *Alexander* are inapplicable because those "courts merely

23  relied on California Code of Civil Procedure [§] 1281.2 to exercise their discretion to defer

24  appraisal" and that such a deferral has already been rejected by this Court.  (ECF No. 80 at 16

25  (citing ECF No. 25 at 7).)  As the foregoing quotations from *Kirkwood* and *Alexander* plainly

26  show, those courts did not "merely rely" on the California Code of Civil Procedure to arrive at

27  their dispositions.  Instead, those courts reviewed California Insurance Code § 2071 and

28  California Code of Regulations Title 10, § 2695.9, and determined that legal proceedings

1   unrelated to the value of insured losses subject to appraisal were not precluded under those

2   statutory provisions or related case law.  *See Alexander*, 203 Cal. App. 4th at 1196–99; *Kirkwood*,

3   193 Cal. App. 4th at 59–63.

4          Second, Defendants argue Plaintiffs have no viable claim for breach of contract.  (ECF

5   No. 80 at 14–16.)  Defendants contend that Plaintiffs "seek to sue [Defendants] for breach of

6   contract" based on Defendants' "alleged violation of [§] 2051(b) and [§] 2695.9(f), which they

7   treat as terms of the insurance contract even though they appear nowhere in the Policies

8   themselves . . ."  (*Id.*)  Defendants' suggestion that their insurance policy contracts need not

9   conform to the California Insurance Code is incorrect as a matter of law.  *See Cal. Fair Plan*

10  *Ass'n v. Garnes*, 11 Cal. App. 5th 1276, 1305 (2017).

11

12         All insurance policies issued in California are governed by the provisions of the
       Insurance Code.  When insurance coverage is required by law, the statutory
13      provisions are incorporated into the insurance contract.  The obligations under an
       insurance policy are measured and defined by the pertinent statute, and the statute
14      and the policy together form the insurance contract . . . Any provision in an
       insurance policy that fails to conform to law or violates public policy is
15      unenforceable.

16  *Id.* (quoting 2 Witkin, Summary of Cal. Law, Insurance, § 8 (10th ed. 2005)) (internal citations

17  and quotation marks omitted).  Defendants further argue Plaintiffs "[a]s a matter of law . . . have

18  no contractual damages, as [Defendants] owe[] no unpaid policy benefits according to the

19  appraisal awards, which resulted in a final and binding determination of what was owed on

20  Plaintiff[s'] claim[s]."  (*Id.* at 15 (citing Cal. Ins. Code § 2071; *Appalachian Ins. Co. v. Rivcom*

21  *Corp.*, 130 Cal. App. 3d 818, 824–25 (1982)).)

22         First, § 2071 does not contain the terms "final" or "binding," nor does it contain any

23  language suggesting appraisal awards are in fact final, binding, or unreviewable.  *See* Cal. Ins.

24  Code § 2071.  Second, though Defendants cite a 1982 case for their arguments regarding

25  appraisal awards, "[t]he direction to maintain informality in appraisal proceedings was inserted

26  into [§] 2071 in 2001, in response to complaints of insurer abuses" and "[i]n an effort to equalize

27  the positions of insurers and insureds . . ."  *Kirkwood*, 193 Cal. App. 4th at 58 (citing *Mahnke v.*

28  *Superior Ct.*, 180 Cal. App. 4th 565, 573 (2009)).  Third, § 2051, which governs open policies,

13

1   "was amended to state exactly how the measure of actual cash value should be determined" in

2   2004. *Id.* at 54. Moreover, "[i]mplementing regulations promulgated thereafter now mandate

3   that the insurer itemize, justify and fully explain all adjustments to the amount claimed, including

4   for depreciation, and that depreciation must be attributable to the condition and age of the

5   property . . ." *Id.* (citing Cal. Code Regs. tit. 10, § 2695.9(f)).

6         Defendants note Plaintiffs received their appraisal awards on November 18, 2016, and

7   Plaintiffs failed to file a petition to vacate the appraisal awards within the 100-day petition period

8   prescribed by California Code of Civil Procedure § 1288. (ECF No. 80 at 11.) Defendants argue

9   "the statutory period to challenge any appraisal awards is 100 days after service of the signed

10   award, and no challenges may be raised after that time." (*Id.* at 11, 15 (citing Cal. Civ. Proc.

11   Code § 1288; *Louise Gardens of Encino Homeowners' Ass'n, Inc. v. Truck Ins. Exchange, Inc.*,

12   82 Cal. App. 4th 648, 659 (2000); *Knass v. Blue Cross of Cal.*, 228 Cal. App. 3d 390, 393–94

13   (1991)). However, § 1288 contains no such prohibition:

14
15
16
> A petition to confirm an award shall be served and filed not later than four years after the date of service of a signed copy of the award on the petitioner. A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of service of a signed copy of the award on petitioner.

17   Cal. Civ. Proc. Code § 1288. Further, both of the cases Defendants cite involved parties seeking

18   to challenge appraisal or arbitration awards after a trial court entered judgment confirming the

19   awards. *See Louise*, 82 Cal. App. 4th at 648, 656; *Knass*, 228 Cal. App. 3d at 394 ("The fact the

20   award was reduced to a judgment does not resurrect [plaintiff's] opportunity to challenge it."). In

21   the instant case, Defendants have neither filed a petition to confirm the appraisal award, nor has

22   the Court reduced the confirmed award to a judgment. Defendants' arguments regarding the

23   confirmation under § 1288 are therefore unavailing.

24         Accordingly, with respect to Plaintiffs' breach of contract claim, the Court cannot at this

25   stage find "no set of facts can be proved under the [supplement] to the pleadings that would

26   constitute a valid and sufficient claim . . ." *Miller*, 845 F.2d at 214.

27   ///

28   ///

1                         *b) Breach of the Implied Covenant of Good Faith and Fair*

2                                     *Dealing*

3       Defendants argue Plaintiffs' claim for breach of the implied covenant of good faith and

4 fair dealing fails as a matter of law because "[w]ithout a breach of the contract, there can be no

5 breach of the implied covenant of good faith and fair dealing." (ECF No. 80 at 17) (citing *Waller*

6 *v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995)).)  As discussed above, Defendants are

7 incorrect that Plaintiffs have failed to state a claim for breach of contract.  Therefore, Defendants'

8 arguments regarding the sufficiency of Plaintiffs' allegations regarding their claims for breach of

9 the implied covenant of good faith and fair dealing also fail.

10                               *c)      Violation of the UCL*

11       Defendants argue Plaintiffs cannot recover restitution or seek injunctive relief under the

12 UCL because "the appraisal process fully resolved the claims of Plaintiffs . . . and conclusively

13 determined that they have been overpaid." (ECF No. 80 at 17–18.)  California Business and

14 Professions Code §§ 17200–17210 allows for actions to be prosecuted by "a person who has

15 suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal.

16 Bus. & Prof. Code § 17204.  As stated previously, Defendants have neither filed a petition to

17 confirm the appraisal award nor established that the award is unreviewable.  Defendants therefore

18 fail to show Plaintiffs have no basis for recovery under the UCL.

19                               *d)      Declaratory Relief*

20       Defendants argue Plaintiffs have no claim for declaratory relief because declaratory relief

21 operates prospectively and Plaintiffs cannot "articulate any basis on which to believe there will

22 ever be a future dispute," as "their losses were overpaid." (ECF No. 80 at 20.)  Defendants

23 further assert "declaratory relief is not an independent cause of action, and is improper where the

24 claim merely replicates other substantive causes of action asserted in the pleading." (*Id.* at 19

25 (emphasis omitted).)

26       Federal Rule of Civil Procedure 57 provides: "The existence of another adequate remedy

27 does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.  The

28 U.S. Supreme Court has held "that district courts possess discretion in determining whether and

1    when to entertain an action" for declaratory relief, but it has not delineated the outer boundaries

2    of this discretion in other cases in which there are no parallel state proceedings. *See Wilton v.*

3    *Seven Falls Co.*, 515 U.S. 277 (1995).  "Various courts have held . . . that, where determinations

4    of a breach of contract claim will resolve any question regarding interpretation of the contract,

5    there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is

6    appropriate." *Vascular Imaging Professionals, Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1010

7    (S.D. Cal. 2019) (citing *Streamcast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345, at * 3–4

8    (C.D. Cal. 2006)).  "However, declaratory relief is appropriate where a breach of contract claim

9    will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *Id.*

10   (internal citations omitted).

11            Here, Plaintiffs' breach of contract claim seeks redress for "actual financial loss and

12   damage" (ECF No. 78-2 at ¶ 92), while Plaintiffs' declaratory relief claim seeks an order "to

13   define the respective rights and duties of . . . Defendant[s] . . . under California statutes and

14   regulations and the standard insurance contract" (*id.* at ¶ 84).  Plaintiffs' breach of contract claim

15   "seeks damages to redress past wrongs, whereas the declaratory relief claim goes one step

16   further," seeking a declaration that "Defendant[s'] depreciation calculation method violates

17   California Insurance Code [§] 2051" and "Defendant[s'] failure to fully disclose its method of

18   calculating depreciation violates [Cal. Code Regs. Tit. 10, § 2695.9(f)]."  (*Id.* at ¶ 85); *Vascular*

19   *Imaging Professionals, Inc.*, 401 F. Supp. 3d at 1010–11.  Plaintiffs' declaratory relief claim

20   seeks a different form of relief from its breach of contract claim, and thus the Court cannot

21   conclude the claims are duplicative.  The Court is therefore unable to conclude that "no set of

22   facts can be proved under the [supplement] to the pleadings that would constitute a valid and

23   sufficient claim . . ." *Miller*, 845 F.2d at 214.

24            Based on the foregoing, the Court finds the futility factor weighs in favor of granting

25   leave to supplement.

26            The Court's focus in evaluating a Rule 15(d) motion to supplement is on judicial

27   efficiency.  The Court finds that allowing Plaintiffs to file their proposed FAC in this case will

28   enable it to award complete relief in one action and avoid waste associated with separate actions.

*Neely*, 130 F.3d at 402; *Keith*, 858 F.2d at 473; *Yates*, 299 F.R.D. at 613.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion for Leave to File a First Amended Complaint.  (ECF No. 78.)  Plaintiffs may file their First Amended Complaint not later than fourteen (14) days from the electronic filing date of this Order.  Defendants shall file an answer to the First Amended Complaint not later than thirty (30) days after the electronic filing date of the First Amended Complaint.

IT IS SO ORDERED.

DATED:  March 30, 2021

Troy L. Nunley
United States District Judge