UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT PIVONKA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, et al., <br><br> Defendants. | No. 2:11-cv-01759-TLN-CKD <br><br><br> **ORDER** |

This matter is before the Court on Defendants Allstate Insurance Company and Allstate Property and Casualty Company's (collectively, "Defendants" or "Allstate") Motion to Dismiss. (ECF No. 89.) Plaintiffs Kent Pivonka ("Pivonka") and James Smith ("Smith") (collectively, "Plaintiffs") filed an opposition. (ECF No. 95.) Defendants filed a reply. (ECF No. 97.) For the reasons set forth below, the Court GRANTS Defendants' motion.

///
///
///
///
///
///

1

## I.     Factual and Procedural Background[1]

Plaintiffs are California residents who carried insurance policies with Allstate and made claims for personal property losses caused by a fire. (ECF No. 85 at 3.) Plaintiffs' policies obligate Allstate to pay the actual cash value ("ACV") of lost or damaged property subject to certain exclusions. (*Id.*) The policies characterize ACV as follows: "If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an [ACV] basis. This means there may be a deduction for depreciation." (*Id.*)

Plaintiffs allege that during the pre-appraisal process, Allstate used unlawful depreciation calculation methods to estimate their claims. (*Id.* at 10–14.) More specifically, Plaintiffs allege Allstate improperly calculated depreciation of their personal property based on age and general category rather than actual physical condition, which resulted in excessive depreciation amounts. (*Id.*) Plaintiffs further allege Allstate failed to justify these depreciation amounts in writing. (*Id.*)

Plaintiffs filed a putative class action in Sacramento County Superior Court on May 27, 2011. (ECF No. 1 at 11.) On July 1, 2011, Defendants removed the action to this Court. (*Id.* at 1.) On December 12, 2011, because the parties disputed the pre-appraisal estimates, the Court granted Defendants' motion to compel an appraisal of Plaintiffs' personal property and stayed this action pending the conclusion of the appraisal. (ECF No. 25.)

Following an appraisal hearing held on October 27, 2016, an appraisal panel issued awards on November 18, 2016. (ECF No. 46 at 2.) Pivonka's appraisal award determined the ACV of his personal property claim to be $68,039, which is less than the pre-suit amount Allstate paid Pivonka for the claim.[2] (ECF No. 91-1 at 11 (indicating Allstate paid Pivonka $106,406.89,

---

[1]     The following recitation of facts is taken from Plaintiffs' First Amended Complaint ("FAC") unless otherwise noted. (ECF No. 85.)

[2]     Defendants request the Court consider various exhibits in deciding the instant motion. (ECF No. 91.) Those exhibits include: a letter from Allstate to Plaintiffs' counsel demanding appraisal of Pivonka's personal property claim (Exhibit B); a letter from Allstate to Plaintiffs' counsel demanding appraisal of Smith's personal property claim (Exhibit C); the appraisal award in the amount of $68,039 regarding Pivonka's personal property claim (Exhibit D); a 29-page itemized list of contents containing ACV amounts allocated by the appraisal panel for Pivonka's claim (Exhibit E); the appraisal award in the amount of $88,599 regarding Smith's personal property claim (Exhibit F); and a 104-page itemized list of contents containing ACV amounts

1  which included an initial benefits payment of $81,312.09); *id.* at 17 (indicating the appraisal panel

2  awarded Pivonka $68,039).)  Smith's appraisal award determined the ACV of his personal

3  property claim to be $88,599, which is less than the pre-suit amount Allstate paid Smith for the

4  claim.  (ECF No. 91-1 at 8 (indicating Allstate paid Smith $99,257.49); ECF No. 91-2 at 2

5  (indicating the appraisal panel awarded Smith $88,599).)

6  On March 22, 2017, the Court lifted the stay.  (ECF No. 47.)  On March 31, 2021, the

7  Court granted Plaintiffs' motion for leave to amend the Complaint.  (ECF No. 84.)  Plaintiffs filed

8  the operative FAC on April 13, 2021.  (ECF No. 85.)  Plaintiffs allege claims for: (1) declaratory

9  relief; (2) breach of contract; (3) breach of the implied covenant of bad faith; and (4) unfair

10 business practices in violation of California Business & Professions Code § 17200.  (*Id.*)

11 Plaintiffs allege that because of Allstate's unlawful depreciation calculation methods used during

12 the pre-appraisal process, Plaintiffs incurred unnecessary expenses in the appraisal process

13 ($6,263.58 for Pivonka and $9,113.58 for Smith) and Allstate failed to pay the full value of

14 Plaintiffs' losses.  (*Id.* at 12, 14–15.)

15 Defendants filed the instant motion to dismiss on May 14, 2021.  (ECF No. 89.)

16 Defendants move to dismiss pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and

17 12(b)(6).  Because the Court concludes Plaintiffs lack standing to bring this action, the Court only

18 addresses the parties' arguments related to the Rule 12(b)(1) motion herein.

19 ///

20 ///

---

allocated by the appraisal panel for Smith's claim (ECF No. G).  Plaintiffs oppose incorporation of Exhibits A–G.  (ECF No. 95-1.)  Plaintiffs argue: (1) the Court may not consider material beyond the pleadings for a Rule 12(b)(6) motion; (2) the exhibits are specific to the appraisal process, while Plaintiffs' claims are founded on *pre-appraisal* conduct; (3) incorporation by reference would violate the 20-page limit set by the Court; and (4) the evidence constitutes impermissible hearsay.  (*Id.*)  Plaintiffs ignore that a court considering a motion to dismiss for lack of subject matter jurisdiction is not restricted to the face of the complaint and may review any evidence to resolve disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Plaintiffs also fail to persuade the Court that it should not consider the exhibits based on the hearsay rule at this stage, especially considering Plaintiffs do not contest the authenticity or reliability of these documents in any meaningful way.  Plaintiffs' remaining arguments are unpersuasive.  Accordingly, the Court GRANTS Defendants' request (ECF No. 91) and will consider the exhibits herein.

## II.  STANDARD OF LAW

A motion under Rule 12(b)(1) challenges a federal court's jurisdiction to decide claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A court considering a motion to dismiss for lack of subject matter jurisdiction is not restricted to the face of the complaint and may review any evidence to resolve disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (in a factual attack on subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations."). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

If plaintiffs lack standing under Article III of the United States Constitution, then the Court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is redressable by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) *as revised* (May 24, 2016); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

## III.  ANALYSIS

Defendants argue Plaintiffs lack standing to maintain this action because they have not suffered an injury-in-fact. (ECF No. 89 at 16.) Specifically, Defendants contend Plaintiffs suffered no injury because "the appraisal process conclusively and finally determined that Allstate fully paid, and indeed *overpaid*, the personal property claims of Plaintiffs." (*Id.* (emphasis in original).)

In opposition, Plaintiffs argue "[d]espite the fact that [Pivonka and Smith] have gone through the appraisal process, their claims for relief stand undiminished." (ECF No. 95 at 6.)

Plaintiffs frame their injury as follows: "Allstate's illegal offer to settle Plaintiffs' claims, pre-appraisal, used an improper and unlawful method of depreciation, deprived Plaintiffs of the money they were owed under their policy, and . . . damaged Plaintiffs by forcing them into a useless and unnecessary appraisal process." (*Id.* at 7.) In the alternative, Plaintiffs argue the "risk of future harm is imminent because it can be guaranteed that there will be dispute as to the correct valuation of" class member's losses. (*Id.*)

The Court agrees with Defendants that Plaintiffs fail to meet their burden to show they have suffered an injury-in-fact. Plaintiffs repeatedly emphasize that their claims are based solely on Defendants' pre-appraisal conduct — not the subsequent appraisal. Notably, Plaintiffs do not contest their appraisal awards in their opposition. Nor do Plaintiffs dispute the fact that prior to this lawsuit, Defendants paid them amounts towards their property claims exceeding the amounts awarded for those claims in the appraisal. It is unclear to the Court what harm Plaintiffs suffered when the available evidence suggests Plaintiffs were overpaid for their property claims. Based on the Court's review of the FAC, Plaintiffs allege they were forced to spend "well more than $5,000" to have their claims sent to a "futile" appraisal. (ECF No. 85 at 8.) Pivonka alleges he incurred at least $6,263.58 in expenses for the appraisal process. (*Id.* at 12.) Smith alleges he incurred at least $9,113.58 in expenses for the appraisal process. (*Id.* at 14.) However, Plaintiffs fail to develop these allegations further or provide any evidence to substantiate the allegations in their opposition. Even if the Court accepted Plaintiffs' allegations as true, Defendants have provided evidence showing the overpayment was greater than the expenses Plaintiffs allegedly incurred because of the appraisal. In short, based on the record before the Court, Plaintiffs have not persuaded the Court that Defendants' pre-appraisal conduct caused them financial harm.

Plaintiffs discuss at length *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), apparently just to introduce the general rule that Article III standing requires a showing of concrete harm. (ECF No. 95 at 7.) Plaintiffs fail to explain how *TransUnion* is otherwise relevant to the instant case. Plaintiffs also cite the following California state court cases: (1) *Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 193 Cal. App. 4th 49 (2011); (2) *Doan v. State Farm Gen. Ins. Co.*, 195 Cal. App. 4th 1082 (2011); and (3) *Alexander v. Farmers Ins. Co.,*

*Inc.*, 219 Cal. App. 4th 1183 (2013). (ECF No. 95 at 9–10.) These cases are distinguishable for at least three reasons. First, Article III standing was not an issue in any of the cases as they were not heard in federal court. Second, all three decisions occurred prior to appraisal. *See Kirkwood*, 193 Cal. App. 4th at 53 (affirming a trial court's denial of a motion to compel appraisal); *Alexander*, 219 Cal. App. 4th at 1185 (same); *Doan*, 195 Cal. App. 4th at 1104–05 (reversing dismissal of a pre-appraisal challenge). Third, there was no evidence the plaintiffs in *Kirkwood*, *Doan*, or *Alexander* had been overpaid for their insurance claims. While the three cases support the general contention that certain issues can be litigated in court prior to appraisal, they do not support Plaintiffs' contention that they have Article III standing to challenge Defendants' pre-appraisal conduct in federal court in the absence of concrete harm.

Based on these deficiencies, Plaintiffs also fail to persuade the Court they have Article III standing based on harm to other class members. *Spokeo, Inc.*, 136 S. Ct. at 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'"); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

### IV. CONCLUSION

For the aforementioned reasons, the Court GRANTS Defendants' Motion to Dismiss with leave to amend. (ECF No. 89.) Plaintiffs may file an amended complaint not later than thirty (30) days from the electronic filing date of this Order. Defendants shall file a responsive pleading not later than twenty-one (21) days after Plaintiffs file an amended complaint. If Plaintiffs opt not to file an amended complaint, the Court will dismiss the action and close the case.

IT IS SO ORDERED.

**DATED: December 15, 2022**

Troy L. Nunley
United States District Judge